IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DISTRICT

LENA PAINTER-PAYNE, et al.,

        Plaintiffs,

                                Case No.2:12-cv-00912
     vs.                       Magistrate Judge King

VESTA WEST BAY, LLC,

        Defendant.

## OPINION AND ORDER

This is an action under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, in which Plaintiffs, a person with disabilities and her son and authorized live-in caretaker, allege that Defendant, the landlord of the Section 8 apartment in which Plaintiffs resided, improperly evicted them based on plaintiff Christopher Painter's residency in the apartment. Plaintiff Lena M. Painter-Payne specifically alleges that Defendant denied requests for reasonable accommodations in violation of 42 U.S.C. § 3604(f)(1)(A), (f)(3)(B). Plaintiff Christopher Painter asserts a claim of defamation *per se*. Plaintiffs seek injunctive and monetary relief.

This matter is before the Court for consideration of *Plaintiffs' Motion for Sanctions Against Defendant for Defendant's Failure to Cooperate in Discovery* ("*Plaintiffs' Motion*"), Doc. No. 59, *Defendant's Brief in Opposition to Plaintiffs' Motion for Sanctions* ("*Defendant's Response*"), Doc. No. 68, and *Plaintiffs' Reply to*

*Defendant's Brief in Opposition to Plaintiffs' Motion for Sanctions* ("*Plaintiffs' Reply*"), Doc. No. 72.

Also before the Court is *Defendant's Motion to Strike Portion of Plaintiffs' Motion for Sanctions Related to Jennifer Moran's Deposition* ("*Defendant's Motion to Strike*"), Doc. No. 67, *Plaintiffs' Memorandum Contra to Defendant's Motion to Strike Portion of Motion for Sanctions Related to Jennifer Moran's Deposition* ("*Plaintiffs' Memorandum contra Defendant's Motion to Strike*"), Doc. No. 74, and *Defendant's Reply to Plaintiffs' Memorandum Contra to Defendant's Motion to Strike* ("*Defendant's Reply to Plaintiffs' Memorandum Contra*"), Doc. No. 75. Because *Defendant's Motion to Strike* and *Defendant's Response* relate to the same deposition and present similar arguments, the arguments in *Defendant's Motion to Strike* will be taken into consideration in deciding *Plaintiff's Motion*. Therefore, *Defendant's Motion to Strike*, Doc. No. 67, is **DENIED.**

## I. Background

Plaintiff Lena Painter-Payne ("Ms. Painter-Payne") is a person with disabilities who formerly resided with her son and live-in aide, plaintiff Christopher Painter ("Mr. Painter"), in an apartment complex owned by Defendant, Vesta West Bay, LLC ("West Bay" or "Defendant"). *Verified Complaint*, Doc. No. 1, p. 1, ¶ 7. Because of her disabilities, Ms. Painter-Payne was provided a Section 8 housing voucher by the Columbus Metropolitan Housing Authority ("CMHA"). *Id.* at ¶¶ 5-6. On June 1, 2012, CMHA notified both Plaintiffs and Defendant that Mr. Painter had been approved as Ms. Painter-Payne's live-in aide. *Id.* at ¶ 14.

Plaintiffs allege that, in August 2012, Defendant asked either that Mr. Painter vacate the premises or that Ms. Painter-Payne relocate. *Id.* at ¶ 16. According to Plaintiffs, Defendant based its demand on its belief that Mr. Painter was a sex offender in light of Mr. Painter's 1999 arrest on a charge of rape, even though that charge had been dismissed. *Id.* at ¶¶ 16-17.

Plaintiffs further allege that, after Ms. Painter-Payne refused Defendant's request, Defendant demanded that Ms. Painter-Payne sign a mutual rescission of the lease (as a predicate for Defendant's issuance of a voucher for relocation); otherwise, Ms. Painter-Payne would be evicted. *Id.* at ¶ 18. Ms. Painter-Payne signed the mutual rescission agreement but, because her signature had not been notarized as required by CMHA's policies, Plaintiffs were refused a relocation voucher. *Id.* at ¶ 20. Defendant served a notice to vacate on October 1, 2012. *Id.* at ¶ 30. Plaintiffs initiated this action on October 4, 2012. *Id.* at p. 1.[1]

## II. *Plaintiffs' Motion*

*Plaintiffs' Motion* alleges deficiencies in Defendant's preparation of its corporate designees, in Defendant's inclusion in its initial disclosures under Rule 26(a)(1)(A)(i) of one Jennifer Moran as a witness with personal knowledge of discoverable information, and in Defendant's production of discoverable information after the July 30, 2013 discovery completion date.

---

[1] The parties thereafter agreed to Plaintiffs' relocation. *Report on Status of Plaintiffs' Motion for Temporary Restraining Order,* Doc. No. 22.

**Rule 30(b)(6) Designees.** On June 4, 2013, Plaintiffs noticed Defendant's deposition, pursuant to Rule 30(b)(6), on the following topics:

1.  West Bay's policies and procedures and application of same for tenant screening and selection, including but not limited to background checks, reference checks, and certifications for compliance with tax credit properties between January 2010 and present.

2.  Any changes in West Bay's policies and procedures for tenant screening in the past five years.

3.  West Bay's policies and procedures and application of same for requests for reasonable accommodations under the Fair Housing Act, including those for live-in aides.

4.  West Bay's policies and procedures for providing notices to tenants of lease violations.

5.  West Bay's policies and procedures and application of same for terminating tenants for conduct of household members or guests.

6.  West Bay's policies and procedures and application of same for recertification of tenants.

7.  West Bay's management structure and responsibility and authority to admit or terminate tenants.

8.  West Bay's knowledge of Columbus Metropolitan Housing Authority's Section 8 program, rules, policies, and procedures.

9.  Lena Painter-Payne tenancy, including admission process and termination.

10. Barbara Douglas tenancy, including admission process and termination.

11. West Bay's policies and procedures including application of same for live-in aide application, approval and termination.

*Plaintiffs' Motion*, Exhibit 1. Defendant designated Gary Weekley to testify on "events surrounding termination of tenancy of Lena Painter-Payne," and Dixie Pyne to testify on the remaining topics. *Id.,*

Exhibit 4A. Plaintiffs deposed these designees on July 1, 2013, *see Deposition of Gary Weekley*, Doc. No. 52; *Deposition of Dixie Pyne,* Doc. No. 53. In their motion for sanctions, Plaintiffs contend that Defendant failed to properly prepare these witnesses as required by Rule 30(b)(6). *Plaintiff's Motion.*

**Disclosure of Jennifer Moran pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).** In its initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant identified four (4) persons likely to have discoverable information, *see* Fed. R. Civ. P. 26(a)(1)(A)(i), including Jennifer Moran, whom Defendant identified as "the area property manager at Vesta corporation [who] may have personal knowledge of the rules, procedures, and policies of West Bay Apartments, LLC [,] and [who] also has personal knowledge of the facts and circumstances giving rise to this action." *Id.,* Exhibit 4A. In their motion for sanctions, Plaintiffs contend that, because their deposition of Ms. Moran demonstrated that she had no personal knowledge relevant to the issues presented in this action, her name should not have been included in Defendant's initial disclosures.

**Production of Discovery after the Discovery Completion Date.** On August 7, 2013, *i.e.,* following the close of discovery, Defendant provided to Plaintiffs contact information for three (3) individuals who had been identified by other deponents as having personal knowledge of the issues presented in this action. *Id.,* Exhibit 17. Defendant also produced Ms. Painter-Payne's rent ledger. *Id.,* Exhibit 17A. In their motion for sanctions, Plaintiffs contend that this

information should have been produced by Defendant prior to the close of discovery.

Plaintiffs seek sanctions in the form of costs, including reasonable attorneys' fees, associated with the depositions of Defendant's corporate designees and Ms. Moran; Plaintiffs also seek to preclude Defendant's introduction of evidence relating to information on which these deponents were unable to testify and relating to discovery produced by Defendant after the discovery completion date. *Id.*

**A. Rule 30(b)(6) Depositions:**

Plaintiffs deposed both Ms. Pyne and Mr. Weekley on July 1, 2013. *See Deposition of Dixie Pyne*, Doc. No. 53; *Deposition of Gary Weekley*, Doc. No. 52. Plaintiffs argue that Defendant failed to designate a corporate representative under Rule 30(b)(6) who could appropriately testify on behalf of Defendant. *Plaintiffs' Motion*, p. 4.

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides in pertinent part:

> [A] party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more . . . persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). "[A]n organization which is served with a Rule 30(b)(6) deposition notice is obligated to produce a witness

knowledgeable about the subjects described in the notice and to prepare that witness to testify not just to his or her own knowledge, but the corporation's knowledge." *Prosonic Corp. v. Stafford*, No. 2:07-cv-803, 2008 WL 2323528, at *1 (S.D. Ohio June 2, 2008). "A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide binding answers on behalf of the corporation." *U.S., ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *2 (S.D. Ohio Nov. 20, 2009). This includes "preparing the witness to answer fully and without evasion all questions about the designated subject matter." *Id.* A party "may not circumvent this rule simply by producing a witness without knowledge of the subjects believed to be irrelevant." *Prosonic*, 2008 WL 2323528 at *4. Further, the duty to prepare a 30(b)(6) witness extends not only to the matters within the designee's personal knowledge, but also to all matters reasonably known by the corporation. *U.S., ex rel. Fry*, 2009 WL 5227661 at *2. A party has the responsibility under Rule 30(b)(6) to prepare its designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources. . . ." *Id.*

    1. <u>Deposition of Dixie Pyne</u>

    Plaintiffs contend that Ms. Pyne lacked sufficient knowledge to testify as Defendant's corporate designee and refer to four (4) portions of her deposition as evidence of that contention. First, Plaintiffs assert that Ms. Pyne "did not possess basic corporate information regarding events that are at the heart of this litigation" because she was unable to testify on the termination of Lena Painter-

Payne's tenancy. *Plaintiffs' Motion*, p. 5. However, Defendant specifically designated Mr. Weekley, not Ms. Pyne, to testify as to "[e]vents surrounding termination of tenancy of Lena Painter-Payne." *Id.,* Exhibit 4A.

Second, Plaintiffs argue that Ms. Pyne was unprepared to testify as Defendant's designee because she lacked sufficient knowledge as to Mr. Painter's criminal history and the eviction proceeding. *Id.* at p. 5.

> A highly disputed issue in this case is whether the Defendant initiated the eviction process against Plaintiffs based partially on unsupported allegations that Mr. Painter had a prior rape conviction, (he did not) and if this was in fact the grounds on which the eviction was initiated, whether, when and how the Defendant came to know this information. On this crucial matter the corporation, with Ms. Pyne speaking as its chosen corporate representative, possessed absolutely no knowledge.

*Id.* Again, because Ms. Pyne was not designated to testify about Mr. Painter's background check or about Mr. Painter's tenancy or the termination of that tenancy, this Court concludes that matters fell outside the scope of Ms. Pyne's designation.

Third, Plaintiffs complain that Ms. Pyne "failed to review even the most rudimentary documents pertaining to the subject areas, noticed by Plaintiffs, about which she would be testifying on behalf of West Bay" because she did not review Lena Painter Payne's complete tenant file. *Id.* at p. 6. Plaintiffs complain, for example, that Ms. Pyne was unable to state when Mr. Painter began living at the complex or when Defendant provided the form lease renewal to Ms. Painter-Payne. *Id.* Although the subject of the lease renewal fell within Ms. Pyne's designated subject area, the document to which Plaintiffs (and Ms.

Pyne) referred was neither dated nor notarized. *Deposition of Dixie Pyne,* p. 77 l. 24 – p. 78 l. 2. The fact that neither Defendant's corporate records nor Ms. Pyne could specify when Ms. Painter-Payne received the lease renewal does not warrant a conclusion that Defendant failed to meet its obligations under Rule 30(b)(6).

Fourth, Plaintiffs complain that Ms. Pyne was unable to testify as to actions taken by West Bay's former employee, Sue Mollette, or to the termination of Ms. Mollette's employment at West Bay. *Plaintiffs' Motion*, p. 6.

> The specific actions taken by West Bay's agent and property manager, Sue Mollette, in furtherance of what Plaintiffs contend was Defendant's unlawfully forcing them out of their home, is perhaps the single most important issue in this case. It is also on this issue that the boiling exasperation of all involved in this unproductive endeavor became unambiguously evident . . . .

*Id.* Plaintiffs also refer to the following as evidence of Ms. Pyne's lack of preparedness:

Q:  Why is Sue [Mollette] no longer working at West Bay?

A:  I don't know. I don't know. I was on leave of absence.

Q:  You're West Bay. Did West Bay terminate Sue?

A:  I believe it was mutual agreement.

*Deposition of Dixie Pyne*, p. 146 l. 2-4. However, this area of inquiry did not fall within Plaintiffs' specified topics of inquiry.  The fact that Ms. Pyne was unable to testify as to the termination of Sue Mollette's employment did not violate Rule 30(30)(6).

In short, it does not appear that Ms. Pyne was unable to testify on the topics for which she was designated.

2. <u>Deposition of Gary Weekley</u>

Defendant's other corporate representative, Mr. Weekley, was designated to testify on the following topic: "Events surrounding termination of tenancy of Lena Painter-Payne." *Plaintiffs' Motion*, Exhibit 4A. Plaintiffs refer to two (2) portions of Mr. Weekley's deposition as evidence that Defendant failed to meet its obligations under Rule 30(b)(6).

First, Plaintiffs refer to the following:

Q.  Have you reviewed Lena Painter-Payne's file at all?

A.  No.

Q.  As West Bay, you were designated to testify about the termination of Lena Painter-Payne from the complex. Are you aware of that?

A.  When you say "terminate", termination -- I knew that her address was on the board for maintenance to have the unit turned, so yes, I knew she was leaving because of that.

Q.  Okay.  Let me give you what we have previously marked as Exhibit 1.  And I ask you to take a look at that and let me know whether you've seen that before.

A.  No, I can't say I've seen this.

[Plaintiffs' Counsel]:

    Counsel, are you presenting him as a 30(B) on No. 9 in this notice?

[Defendant's Counsel]:

    May I see a copy of it?

[Plaintiffs' Counsel]:

    Yes.  They sent designations.

[Defendant's Counsel]:


    We are, regarding the process -- the admission process

and termination.

[Plaintiffs' Counsel]:

Okay.  On No. 9?

[Defendant's Counsel]:

Uh-huh.

[Plaintiffs' Counsel]:

Q.  Mr. Weekley, do you have knowledge of Lena Painter-
Payne's tenancy, including her admission process and
her termination as a tenant at West Bay?

A.  No.

[Plaintiffs' Counsel]:

Counsel, what are we going to do here?  He says he
doesn't have knowledge about the subject area that –

THE WITNESS:

I mean, I know she lived there.  I know she was moving.

[Defendant's Counsel]:

We understood that the termination there was regarding
his knowledge about the incident with Christopher
Painter-Payne that led to the termination.

[Plaintiffs' Counsel]:

Well, this is a notice to the corporation.  So we were
asking for all of West Bay's knowledge in
connection with the termination of Lena Painter-Payne,
not Gary Weekley's knowledge.

[Defendant's Counsel]:

He is the only employee, to my knowledge, working for
West Bay today who was working at the property when the
incident occurred, which is why he's presented here
today to answer these questions.

*Deposition of Gary Weekley*, p. 8 l. 13 - p. 10 l. 12.

Mr.  Weekley  thereafter  testified  regarding  the  termination  of

Plaintiffs' tenancy:

Q.    So let's start with the reason that the Painter-Paynes
      were asked to leave West Bay. It's my understanding
      that West Bay decided that Lena Painter-Payne and
      Christopher Painter had to move out; is that correct?

A.    Correct.

Q.    What was the reason that West Bay decided that Lena
      Painter-Payne and Chris Painter had to move out?

A.    Because Chris Painter -- Painter is it? Yeah, Painter
      -- did not meet the criteria of West Bay.

*Id.* at p. 13 l. 5-16. Plaintiffs also complain that Mr. Weekley was

unable to testify when Mr. Painter began living at the complex.

*Plaintiffs' Motion*, p. 10. Plaintiffs cite the following portion of Mr.

Weekley's deposition transcript:

Q:    Okay. I'm handing you what's marked as Exhibit 4, the
      affidavit of Sue Mollette. And based on Sue
      Mollette's affidavit, when did Chris Painter start
      living at the complex?

A:    I can't honestly answer when he started. I really
      don't know.

Q:    Okay. As West Bay, when did West Bay know that Chris
      was living at the complex?

A:    That, I can't answer, either, because I really don't
      know when he actually started living there.

*Id.* at p. 14 l. 10-20.

Q.    Would Sue Mollette know?

A.    She may have known.

Q.    She was the property manager?

A.    She was the property manager.  She would know more
      than anybody.

Q.    According to her affidavit, when did she say he
      started living there?

A.    That's what I was looking -- I didn't read the whole
      thing yet. She's saying August.

Q.    Okay. In August of 2009, Ms. Painter-Payne moved in?

A.    Okay.

Q.    When did she say Chris Painter began living there?

A.    March of 2012.

*Id.* at p. 14 l. 21 - p. 15 l. 10.

As noted *supra*, Mr. Weekley was designated to testify on behalf of Defendant only about the "[e]vents surrounding [the] termination of tenancy of Lena Painter-Payne." *Plaintiffs' Motion*, Exhibit 1, p. 15. He was not designated to testify as to when Mr. Painter began living at the complex, nor was he designated as Defendant's representative to testify about Ms. Painter-Payne's tenancy in general. Plaintiffs have not established that this witness was not properly prepared to testify pursuant to Rule 30(b)(6).

### B.    Deposition of Jennifer Moran

As noted *supra*, Defendant identified Ms. Moran in its initial disclosures under Rule 26(a)(1). Plaintiffs deposed Ms. Moran on July 2, 2013, *Deposition of Jennifer Moran*, and complain that Ms. Moran did not in fact have any personal knowledge of the facts and circumstances giving rise to this action. Plaintiffs seek sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure for "falsely representing that [Ms. Moran] possessed personal knowledge that she did not actually possess. . . ." *Plaintiffs' Motion*, p. 16.

Plaintiffs provided, in an effort to minimize expense, *Plaintiffs' Motion*, p. 12 n. 3, only ten (10) pages of Ms. Moran's deposition transcript, which apparently consists of 85 pages. *See Plaintiffs' Memorandum contra Motion to Strike*, Exhibit. Defendant argues in

response that a "full and fair presentation" of this issue requires a complete transcript of the deposition. *Defendant's Motion to Strike*, p. 2 (citing S. D. Ohio Civ. R. 7.2(e)).

Plaintiffs specifically complain that Ms. Moran had no knowledge of most of the circumstances surrounding Plaintiffs' "ouster from their home," and that the little information that she did provide came third-hand from Defendant's former property manager, Sue Mollette. *Plaintiffs' Motion*, p. 12(citing *Deposition of Jennifer Moran*, p. 7 l. 9-20). Plaintiffs refer to the following portion of Ms. Moran's deposition as evidence of her lack of personal knowledge relating to this action:

> Q:    Okay. What are [sic] your personal knowledge of the facts and circumstances giving rise to this action, being this lawsuit?
>
> A:    I don't know what this one is about. So what is the question?
>
> Q:    What are [sic] your personal knowledge of the facts and circumstances giving rise to this action, being this lawsuit?
>
> A:    This is strictly saying I know about policies and procedures. I mean, I don't know how to answer your question.
>
> Q:    Do you not have any personal knowledge about the facts and circumstances giving rise to this action?
>
> A:    What I've answered you already.
>
> Q:    I'm asking what are your personal – not – what personal knowledge do you have regarding the facts and circumstances about this lawsuit?
>
> A:    I'm not aware of any facts in regards to this lawsuit.

*Deposition of Jennifer Moran*, p. 9 l. 1-19.

This Court is unable to determine, based only on the portions of the deposition provided by Plaintiffs, whether Ms. Moran was improperly included in Defendant's initial disclosures. Although Ms. Moran may not have had personal knowledge of the facts giving rise to Plaintiffs' particular claims, it appears that she may have had personal knowledge of Defendant's policies and procedures. Because those policies and procedures may be relevant to the claims and defense of the parties, the Court cannot conclude that Defendant acted improperly in including Ms. Moran in its initial disclosures.

**B.  Information Produced after the Discovery Completion Date**

Finally, Plaintiffs complain that Defendant identified additional individuals who could testify about the facts and circumstances of the action and produced a relevant rent ledger only after the close of discovery. *Plaintiffs' Motion*, p. 14. Plaintiffs argue they were prejudiced by Defendant's failure to timely produce this information because Defendant "impeded Plaintiffs' fact-finding ability and needlessly and exponentially increased litigation costs." *Id.* Defendant does not deny or attempt to justify its belated disclosures but notes only that Plaintiffs rejected Defendant's offer to extend the discovery completion date.

Although the Court cannot condone Defendant's failure to produce this discovery in timely fashion, and does not criticize Plaintiffs' refusal to accept Defendant's unilateral suggestion that the Court's discovery completion date be extended, the Court nevertheless concludes that the imposition of sanctions in connection with Defendant's failure in this regard is, at this juncture, unwarranted.

Had Defendant produced this information in a timely fashion, Plaintiffs could have conducted such further discovery as they might see fit. Defendant's motions for summary judgment, Doc. Nos. 50, 51, are fully briefed and awaiting resolution, as is Plaintiffs' motion for partial summary judgment, Doc. No. 60. A final pretrial conference and trial have not yet been scheduled. It therefore appears that, should the Court reopen discovery, Plaintiffs can be placed in the position they would have occupied had Defendant produced this discovery in a timely fashion.

Under these circumstances, the Court concludes that a reopening of discovery will serve not only the parties' interests but also the Court's interest in assuring that cases are resolved on their merits. Accordingly, it is hereby **ORDERED** that discovery be **REOPENED** to permit Plaintiffs to conduct such discovery, including depositions, as they deem appropriate in connection with Defendant's belated production. All such discovery must be completed no later than June 20, 2014.

**WHEREUPON**, Defendant's *Motion to Strike*, Doc. No. 67, is **DENIED** and Plaintiffs' *Motion for Sanctions*, Doc. No. 59, is likewise **DENIED**.

April 21, 2014                              *s/  Norah McCann King*
                                           Norah McCann King
                                           United States Magistrate Judge