**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

LENA M. PAINTER-PAYNE,
*et al.*,

                Plaintiff,

      vs.                                  Civil Action 2:12-cv-912
                                              Magistrate Judge King

VESTA WEST BAY, LLC,

                Defendant.

<u>**OPINION AND ORDER**</u>

This is an action under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., in which plaintiffs, a person with disabilities and her son, allege that defendant, the landlord of the Section 8 apartment in which plaintiffs resided, improperly evicted them based on plaintiff Christopher Painter's residency in the apartment. This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of three motions for summary judgment. Defendant Vesta West Bay, LLC, ("West Bay") has separately moved for summary judgment against plaintiff Christopher Painter, *Defendant's Motion for Summary Judgment with Respect to Plaintiff Christopher Painter,* ECF 50 ("*West Bay's MSJ-Painter*"), and against plaintiff Lena Painter-Payne, *Defendant's Motion for Summary Judgment with Respect to Plaintiff Lena Painter-Payne,* ECF 51 ("*West Bay's MSJ-Painter-Payne*"). Plaintiffs have filed a cross-motion for partial summary judgment as to liability on their FHA claims, *Plaintiffs Lena Painter Payne and Christopher Painter's Motion for Partial Summary*

*Judgment*, ECF 60 ("*Plaintiffs' MSJ*"). This matter is also before the Court for consideration of *Plaintiffs' Motion In Limine to Exclude the Expert Report of Donald L. Beebout* ("*Plaintiffs' Motion in Limine*"), ECF 97, and *Plaintiffs' Motion to Strike Statements From the Affidavit of Jennifer Moran That Are Not Based on Personal Knowledge* ("*Plaintiffs' Motion to Strike*"), Doc. No. 94. After several extensions and the filing of supplemental memoranda, the pending motions are now ripe for consideration.

*Plaintiffs' Motion to Strike* seeks to strike paragraphs seven through 12 of the *Affidavit of Jennifer Moran, Portfolio Director at Vesta Corporation*, ECF 51-3, on the basis that the affiant lacks personal knowledge on the subject matter of the statements. *Plaintiffs' Motion to Strike* is unopposed and is for that reason **GRANTED**. *See* S.D. Ohio Civ. R. 7.2(a)(2) ("Failure to file a memorandum in opposition may be cause for the Court to grant any Motion . . . .").

For the reasons that follow, *West Bay's MSJ-Painter*, ECF 50, is **GRANTED,** *West Bay's MSJ-Painter-Payne*, ECF 51, is **GRANTED,** and *Plaintiffs' MSJ*, ECF 60, is **DENIED.**

The Court declines to consider *Plaintiffs' Motion in Limine*.

**I.    Background**

Defendant West Bay is a limited liability company that owns and operates the West Bay apartment complex in Columbus, Ohio. *Amended Answer*, ECF 13, ¶ 3; *Affidavit of Jennifer Moran*, ECF 51-3. On August 1, 2009, plaintiff Lena M. Painter-Payne ("Painter-Payne") entered

into a lease agreement ("2009 Lease Agreement") with West Bay to rent an apartment (the "Premises") from West Bay for one year. *West Bay's MSJ-Painter*, Exhibit A ("*2009 Lease Agreement*"). Painter-Payne holds a Section 8 voucher through the Columbus Metropolitan Housing Authority ("CMHA"), which provides a federal subsidy for part of her rent. *Amended Answer*, ¶ 6. Painter-Payne used the Section 8 voucher to subsidize the rent owed to West Bay. *Id.* at ¶¶ 7-8. In addition to accepting Section 8 vouchers, West Bay also receives tax credits for low-income housing pursuant to I.R.C. § 42.

The 2009 Lease Agreement provides that Painter-Payne would use the Premises as a private dwelling only for herself and Barbara Payne, who was listed as a live-in care giver. *2009 Lease Agreement*, p. 1. Painter-Payne agreed to "permit other Individuals to reside in the unit only after obtaining the prior written approval of the Landlord." *Id.* On or before August 1, 2009, Painter-Payne signed a copy of West Bay's Rules and Regulations, Resident Selection Criteria, and Drug Free Housing Contract. *West Bay's MSJ-Painter*, Exhibits B, C, D.

Painter-Payne renewed her lease for a one year term on August 1, 2010, and again on August 8, 2011. *Id.* at Exhibits E, F. Between March and May 2012, Painter-Payne's son, plaintiff Christopher Painter ("Painter"), began living at the Premises as Painter-Payne's live-in aide; Painter did not apply to West Bay for permission to live at the Premises or to serve as Painter-Payne's live-in aide. *Christopher Painter Deposition* ("*Painter Deposition*"), ECF 55, pp. 17-19; *Mollette Affidavit*, ECF 60-1, ¶ 7. On June 1, 2012, Painter-Payne again

3

renewed her lease with West Bay for a period of one year.  *West Bay's MSJ-Painter*, Exhibit G.  Each of the three lease renewals specifies that only Painter-Payne may reside in the Premises; no other resident or live-in aide is listed on any renewal.

On August 16, 2012, Painter became upset with West Bay's groundskeeper, *Dannie Maynard Deposition*, ECF 54, p. 15, and argued with West Bay's maintenance technician Dannie Maynard.  *Id.; Gary Weekley July 2, 2013 Deposition*, ECF 56, p. 15.  Painter was waving a hammer, although Maynard did not feel threatened.  *Dannie Maynard Deposition*, pp. 22-23.  Gary Weekley, West Bay's maintenance supervisor, witnessed part of the argument, thought that Painter posed a threat, and ordered the two men to leave the area.  *Gary Weekley July 2, 2013 Deposition*, pp. 15-16.  Painter returned to the Premises.  Weekley and Sue Mollette, West Bay's property manager, walked to the Premises.  *Id.* at pp. 22-23.

Mollette told Painter-Payne that Painter was not permitted to reside at the Premises and would have to leave.  *Id.* at p. 24.  Painter-Payne informed Mollette that Painter was her caregiver and that she had no one else to provide care.  *Id.* at pp. 24-25; *Gary Weekley July 1, 2013 Deposition*, ECF 52, pp. 29-31.  Mollette responded that Painter did not meet West Bay's criteria and must leave immediately or West Bay would take legal action.  *Gary Weekley July 1, 2013 Deposition*, pp. 29-31.  Mollette also informed Painter-Payne that she could remain in the Premises if Painter left.  *Id.*

After the August 16, 2012 incident, Mollette "reviewed the public

4

records of Mr. Painter and discovered he had a criminal record." *Mollette Affidavit*, ¶ 10. On August 21, 2012, Mollette spoke with Painter-Payne "and gave her the option of remaining a tenant at West Bay and obtaining an approved live-in aide other than Mr. Painter as a reasonable accommodation, or signing a mutual lease rescission to terminate the Second Lease and agreeing to vacate the Premises by September 30, 2012." *Id.* at ¶ 14. Painter-Payne signed a mutual lease rescission on August 21, 2012, and agreed to vacate the Premises by September 30, 2012. *West Bay's MSJ-Painter*, Exhibit J. A notary signed the mutual lease rescission on September 6, 2012. *Id.*

On September 6, 2012, Carol Ferris of the Columbus Urban League contacted West Bay and requested mediation and a reasonable accommodation "by voiding the 'Mutual Rescission' dated August 21, 2012." *Id.* at Exhibit K. After receiving Carol Ferris' request, "West Bay determined that Mr. Painter posed an immediate threat to the safety of West Bay's community and that September 30, 2012 was sufficient time for Ms. Painter-Payne and Mr. Painter to relocate." *Mollette Affidavit*, ¶ 18. On September 26, 2012, Carol Ferris again requested additional time for plaintiffs to relocate because the CMHA transition process was not yet complete and because Painter-Payne's disability kept her from assisting in the effort to move. *West Bay's MSJ-Painter*, Exhibit M.

Painter-Payne did not vacate the Premises by September 30, 2012, and West Bay served a three day notice to vacate on October 1, 2012. *Id.* at Exhibit N; *Mollette Affidavit*, ¶¶ 20-21.

5

On October 4, 2012, plaintiffs filed this action and a motion for a preliminary injunction to enjoin the eviction. The District Judge then assigned as the trial judge ordered West Bay to refrain from any effort to evict plaintiffs without prior notice to the Court and plaintiffs. *Order*, ECF 9. Plaintiffs thereafter vacated the Premises. *Report on Status of Plaintiffs' Motion for Temporary Restraining Order*, ECF 22.

## II.  Motions for Summary Judgment

### A.    Standard

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**B.   Discussion**

It is unlawful under the FHA

[t]o discriminate in the sale or rental, or to otherwise
make unavailable or deny, a dwelling to any buyer or renter
because of a handicap of—

**(A)** that buyer or renter,

**(B)** a person residing in or intending to reside in that
dwelling after it is so sold, rented, or made available; or

7

**(C)** any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1).  The discrimination prohibited by the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]"  42 U.S.C. § 3604(f)(3)(B).

"A disabled individual alleging unlawful housing discrimination . . . can rely on any of several different theories to establish an FHA violation: disparate treatment, disparate impact, failure to make a reasonable accommodation, or failure to permit a reasonable modification." *Hollis v. Chestnut Bend Homeowners Ass'n*, --- F.3d ---- -, No. 13-6434, 2014 WL 3715088, at *6 (6th Cir. July 29, 2014). *See also Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996).  "Plaintiffs assert there is evidence to support West Bay's liability under [the first] three theories." *Plaintiffs' MSJ*, p. 7.

Before addressing the three theories of liability, the Court must address three issues raised in the parties' memoranda: (1) whether Painter can assert a cause of action under 42 U.S.C. § 3604(f)(1); (2) whether the three-part burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to plaintiffs' FHA claims, and (3) whether plaintiffs pled, or should have pled, a claim based on disparate impact.

The parties disagree whether Painter, who is not himself disabled, can assert a claim under § 3604(f)(1). As noted *supra*, § 3604(f) prohibits discrimination because of a handicap of

**(A)** [the dwelling] buyer or renter,

**(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

**(C)** any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1). West Bay argues that Painter cannot state a claim under § 3604(f)(1) because he was not a "buyer or renter" of a dwelling. *West Bay's MSJ-Painter*, p. 11 ("The FHA only offers protection to a *buyer or renter* . . . .") (emphasis in original). According to Painter, West Bay's argument "ignores 42 U.S.C. § 3604(f)(1)(C), which allows persons *associated* with disabled persons to recover for injuries they suffer as a result of the association with a disabled person." ECF 77, p. 7. Neither argument is meritorious.

Section 3604(f)(1) prohibits discrimination on account of the handicap of a renter or a resident or of a person associated with the renter. Painter does not claim that he is handicapped. Painter does not, therefore, fall within the express terms of Section 3604(f)(1).

However, the FHA also provides that a civil action may be brought by any "aggrieved person." 42 U.S.C. § 3613. The FHA defines an "aggrieved person" as any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to

occur." 42 U.S.C. § 3602. Standing to sue under the FHA is broad; a
plaintiff "need only show that he or she (1) has suffered an injury in
fact (2) that is causally connected to the defendants' conduct and (3)
that is likely to be redressed by a favorable ruling." *Hamad v.
Woodcrest Condo. Ass'n*, 328 F.3d 224, 230-31 (6th Cir. 2003) (citing
*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *DeBolt v.
Espy,* 47 F.3d 777, 779-82 (6th Cir. 1995)). Standing is therefore not
limited to those individuals who are directly and immediately subject
to discrimination. *Id.*

Painter alleged in the *Complaint* that he lives with Painter-Payne
as her live-in aide and that both individuals were forced to move
because West Bay refused to grant Painter-Payne a reasonable
accommodation for her handicap. Both plaintiffs allege injury by
reason of West Bay's allegedly discriminatory housing practices.
Although Painter is not himself disabled or handicapped, he is
allegedly associated with an allegedly disabled person and he claims
an interest protected by the FHA. *See* 42 U.S.C. § 3601 ("It is the
policy of the United States to provide, within constitutional
limitations, for fair housing throughout the United States."); *Hollis*,
--- F.3d ----, 2014 WL 3715088 at *5 ("The Fair Housing Act, broadly
speaking, prohibits discrimination in the sale or rental of housing
and in the provision of housing services or facilities 'because of
race, color, religion, sex, familial status, or national origin.'")
(quoting 42 U.S.C. § 3604(a), (b)). In short, the Court concludes that
Painter has standing to assert a claim under 42 U.S.C. § 3604(f)(1)

10

against West Bay because he is associated with a person with disabilities and alleges injury as a result of unlawful housing discrimination on the basis of the associated person's disabilities.

The parties also disagree whether the three-part burden-shifting test established in *McDonnell Douglas*, 411 U.S. 792, applies to plaintiffs' claims under § 3604(f). West Bay argues that *McDonnell Douglas* applies; *see West Bay's MSJ-Painter*, p. 10; *West Bay's MSJ-Painter-Payne*, p. 11; ECF 66, p. 4; plaintiffs argue that *McDonnell Douglas* does not apply. *See* ECF 96, p. 3.

"In assessing and resolving an FHA claim, the appropriate analytical framework depends on the theory of liability under which the plaintiff proceeds." *Hollis*, --- F.3d ----, 2014 WL 3715088 at *7. The three-step *McDonnell Douglas* test is an "intent-divining test" that "shifts the burden of production from the plaintiff to the defendant and then back to the plaintiff in an effort to zero in on the specific intent underlying the defendant's conduct." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993)). "Because a disparate-treatment claim requires the plaintiff to establish discriminatory animus, analysis of such a claim focuses on the defendant's intent." *Id.* (citing *HDC, LLC v. City of Ann Arbor,* 675 F.3d 608, 612 (6th Cir. 2012)). The *McDonnell Douglas* test therefore applies to disparate treatment claims under the FHA. *Id.* FHA reasonable accommodation claims and FHA disparate impact claims, by contrast, do not require proof of discriminatory intent. *Id.* at *7-8. The *McDonnell Douglas* intent-divining test therefore does not apply to

FHA reasonable accommodation claims or FHA disparate impact claims. *Id*.

The parties next disagree whether plaintiffs pled or should have pled a § 3604(f) disparate impact claim. West Bay argues that plaintiffs' "disparate impact theory cause of action should be dismissed because it was not pled as part of Plaintiffs' Complaint." ECF 66, p. 10. Plaintiffs acknowledge that they "did not plead disparate impact in the Complaint," ECF 71, p. 13, but argue that they adequately pled a claim for denial of a reasonable accommodation and that their claim may be proven by any theory of recovery regardless of the particular theory of recovery identified in the *Complaint*. ECF 107, p. 2. Plaintiffs' argument is not well taken.

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). *See also Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512 (2002).

"To prevail on a disparate treatment claim, a plaintiff must show proof of intentional discrimination." *HDC, LLC*, 675 F.3d at 612-13 (citing *Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1362 (6th Cir. 1995)). "This can be established either through direct evidence of intentional discrimination or through circumstantial evidence using

the [*McDonnell Douglas*] burden-shifting framework . . . ."  *Id.*
"'[T]o show disparate impact, a plaintiff must demonstrate that a
facially neutral policy or practice has the effect of discriminating
against a protected class of which the plaintiff is a member.'"  *Id.*
(alteration in original) (quoting *Graoch Assocs. # 33, L.P. v.
Louisville/Jefferson Cnty. Metro Human Relations Comm'n,* 508 F.3d 366,
371 (6th Cir. 2007)).  Reasonable accommodation cases focus on the
"operative elements" of § 3604(f)(3)(B): "whether the proposed
accommodation is reasonable and whether it is necessary to afford
disabled persons an equal opportunity for enjoyment." *Hollis*, ---
F.3d ----, 2014 WL 3715088 at *8 (quoting *Smith & Lee Assocs., Inc.*,
102 F.3d at 794).  Although a plaintiff alleging unlawful housing
discrimination can rely on any of these theories to establish an FHA
violation, *see id*. at *6, each theory requires proof of different
elements and, as discussed *supra*, the theories are not all subject to
the same analytical framework.  Specifically pleading the basis for
one theory therefore does not provide sufficient notice such that a
defendant should be prepared to defend on all theories.  By not
pleading a claim for disparate impact in the *Complaint* and, indeed,
not even raising the claim until filing *Plaintiffs' MSJ*, plaintiffs
have deprived West Bay of the opportunity to defend against the claim.
The Court therefore concludes that the *Complaint* fails to state a
claim under the FHA for disparate impact.  *See HDC, LLC*, 675 F.3d at
612-14 (dismissing an FHA disparate impact claim because plaintiffs
had not alleged facts showing that a protected class was

13

disproportionately affected by a facially neutral policy). *See also Ayers v. Multiband Field Servs., Inc.*, No. 13-10765, 2013 WL 5244918, at *1 (E.D. Mich. Sept. 18, 2013) ("[The] amended complaint asserts two distinct claims — violations of Elliot-Larsen due to disparate treatment and disparate impact."); *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:07-0979, 2008 WL 3163531, at *5 (M.D. Tenn. Aug. 4, 2008) ("[Title VII] disparate treatment and disparate impact are distinct claims . . . . [P]lead[ing] a disparate treatment claim does not 'automatically entitle [a plaintiff] to *also* proceed under a disparate impact theory . . . .") (quoting *Flatt v. Elec. Research Mfg. Corp.*, 103 F.3d 129 (6th Cir. 1996) ("A plaintiff seeking to establish a Title VII claim has available two distinct theories of discrimination.")).

### (1) Plaintiffs' Reasonable Accommodation Claims

The FHA prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B). To prove a claim for failure to reasonably accommodate a handicap, a plaintiff must prove that

> (1) she suffers from a disability within the meaning of FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford "an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation.

14

*Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (quoting *DuBois v. Ass'n. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)). *See also Hollis*, --- F.3d ----, 2014 WL 3715088 at *8-9. "The burden is on the plaintiff to establish each element." *Hollis*, --- F.3d ----, 2014 WL 3715088 at *8 (citing *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001)). Nevertheless, reasonable-accommodation cases usually turn on the "operative elements" of § 3604(f)(3)(B), *i.e.*, "whether the proposed accommodation is reasonable and whether it is necessary to afford disabled persons an equal opportunity for enjoyment." *Hollis*, --- F.3d ----, 2014 WL 3715088 at *8.

The parties do not dispute that Painter-Payne suffers from a disability within the meaning of the FHA, that West Bay knew of Painter-Payne's disability, or that West Bay denied Painter-Payne's request for an accommodation that would permit Painter to live with her as a live-in aide. The parties do dispute whether the requested accommodation was reasonable and necessary. To be clear, the dispute is not premised on whether it was reasonable and necessary to permit Painter-Payne to have a live-in aide, but whether it was reasonable and necessary for Painter to be that live-in aide.

In order to prove that the requested accommodation is necessary, plaintiffs "must show that, but for the accommodation, [Painter-Payne] likely will be denied an equal opportunity to enjoy the housing of [her] choice." *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th

Cir. 2002) (internal quotations omitted) (quoting *Smith & Lee Associates, Inc.*, 102 F.3d at 795).

Plaintiffs argue that it was necessary for Painter to serve as Painter-Payne's live-in aide because Painter-Payne "required assistance in day-to [sic] living; her doctors provided documentation that she needed a live-in-aid [sic] and she told West Bay [that Painter] was the only person available to serve in that capacity." *Plaintiffs' MSJ*, p. 17.

Plaintiffs have provided evidence that Painter-Payne required a live-in aide to help her with activities of daily living. *See Affidavit of Carol Ferris*, Doc. 5-3, Exhibit 2 (medical records documenting Painter-Payne's disability and need for a live-in aide). Plaintiffs have also provided evidence that Painter was approved by CMHA on June 1, 2012, to serve as Painter-Payne's live-in aide. *Id*. at Exhibit 1. Plaintiffs have not, however, offered any admissible evidence that it was necessary that Painter serve as Painter-Payne's live-in aide. Painter-Payne may, as plaintiffs contend, have "told West Bay [that Painter] was the only person available to serve [as a live-in aide]," but plaintiffs have offered no admissible evidence that Painter was in fact the only person available to serve as Painter-Payne's live-in aide. *See Plaintiffs' MSJ*, p. 17. *See also* ECF 69, p. 5 (asserting, without citation to the record, "[Painter-Payne] did not merely want [Painter] to live with her, he was necessary."); ECF 71, pp. 5 (same), 9-10 (arguing that West Bay has offered no evidence that a different live-in aide would meet Painter-

Payne's needs). Indeed, a different person had, with West Bay's permission, previously served as Painter-Payne's live-in aide. *See 2009 Lease Agreement*, p. 1. Absent evidence that Painter was the only live-in aide available to Painter-Payne, plaintiffs cannot show that, but for the requested accommodation, Painter-Payne would likely be denied an equal opportunity to enjoy the housing of her choice.

Plaintiffs have therefore failed to offer evidence in support of an essential element of their reasonable accommodations claims.

### (2) Plaintiffs' Disparate Treatment Claims

"To prevail on a disparate treatment claim, a plaintiff must show proof of intentional discrimination." *HDC, LLC*, 675 F.3d at 612 (citing *Cisneros,* 52 F.3d at 1362). "This can be established either through direct evidence of intentional discrimination or though circumstantial evidence using the [*McDonnell Douglas* analysis]." *Id.* (citing *Lindsay v. Yates,* 498 F.3d 434, 440 n. 7 (6th Cir. 2007)). The *McDonnell Douglas* analysis in this context requires that "the plaintiff . . . state a prima facie case by showing that [s]he is a member of a protected class, that [s]he applied to and was qualified to rent or purchase certain housing, that [s]he was rejected, and that the housing remained available thereafter." *Graoch*, 508 F.3d at 371 (citing *Maki v. Laakko,* 88 F.3d 361, 364 (6th Cir. 1996)). "Second, the defendant may then articulate a legitimate non-discriminatory basis for its challenged decision." *Id.* (citing *Selden Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 785 F.2d 152, 160 (6th Cir. 1986)). "Third, if the defendant does proffer such a basis, the plaintiff must

establish that the articulated reason is pretextual." *Id.* (citing *Selden Apartments*, 785 F.2d at 160).  "The burden of persuasion always remains with the plaintiff." *Id.*

The facts of this case do not easily fit within the traditional *prima facie* case because Painter-Payne was already a tenant of West Bay before the alleged discrimination took place.  Nevertheless, West Bay argues that plaintiff cannot state a traditional *prima facie* case of intentional discrimination and that it has offered legitimate, non-discriminatory, and non-pretextual reasons for refusing to allow Painter to serve as Painter-Payne's live-in aide.  West Bay further argues that it reasonably accommodated Painter-Payne by permitting her to utilize the services of a different live-in aide.  As noted *supra*, plaintiffs argue that *McDonnell Douglas* does not apply and that they should not be required to prove a *prima facie* case.  *See, e.g.*, ECF 77, p. 6; ECF 96, p. 3.  Plaintiffs argue only that West Bay intentionally discriminated against Painter-Payne because of her disability by not permitting Painter to serve as Painter-Payne's live-in aide.  Plaintiffs advance five arguments in support of their claim of intentional discrimination.

Plaintiffs first argue that West Bay refused to permit Painter to serve as Painter-Payne's live-in aide because it mistakenly believed that Painter was a sex offender and it therefore wanted him removed from the Premises.  *See Plaintiffs' MSJ*, p. 8 ("From this history [of West Bay employees discussing Painter's record and arrest for a sexual offense,] it is reasonable to infer that West Bay wanted [Painter]

18

gone and they were looking to find something that would allow them to remove him as [Painter-Payne's] live-in-aid [sic].");  *Complaint*, ¶¶ 16-17 (alleging that, "[i]n August, 2012, Defendant West Bay demanded that Ms. Painter-Payne either make her son leave the property or relocate.  Under available information and belief, West Bay's basis for this demand was [the false belief] that Mr. Painter was a sex offender.").  This argument would suggest that West Bay wanted Painter removed from the Premises – not because of any handicap of either Painter or Painter-Payne - but because of Painter's alleged or perceived misconduct. Proof of such intent would, of course, undermine plaintiffs' claim of unlawful discriminatory intent in violation of the FHA.

Plaintiffs next argue that, absent a policy of discrimination, West Bay should have a higher percentage of disabled tenants. *Plaintiffs' MSJ*, p. 11 ("West Bay housed only low-income persons, so absent discrimination against persons with disabilities, likely 18-28% of the tenants would be disabled.  Actually West Bay has almost no disabled tenants.").  Plaintiffs assert that West Bay has a low percentage of disabled tenants compared to the percentage of disabled people in the United States and among low-income persons.  *Id*. Plaintiffs attribute this assertedly low number to West Bay's "applying its 'neutral' policies [in a way to] remove[] disabled tenants." *Id*.  In support of this assertion, plaintiffs rely on the allegations in this case and in an unrelated case against West Bay which was eventually voluntarily dismissed; plaintiffs ask this Court

to "take notice that in August of 2012 West Bay took action to remove at least two disabled tenants, and that both claimed [that] their removal from the complex was due to disabilities."  ECF 71, p. 14.

Plaintiffs' argument in this regard is based on a disparate impact theory which, as the Court held *supra*, was not properly pleaded in this case.  Moreover, plaintiffs have not identified any specific policy or practice on the part of West Bay that has resulted in the allegedly adverse effect.  *See Graoch*, 508 F.3d at 372 ("First, a plaintiff must make a prima facie case of discrimination by 'identifying and challenging a specific [housing] practice, and then show[ing] an adverse effect by offering statistical evidence of a kind or degree sufficient to show that the practice in question has caused the adverse effect in question[.]'") (alteration in original) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000)). In any event, hearsay evidence that another West Bay tenant filed and then voluntarily dismissed a complaint alleging discrimination on the part of West Bay is simply inadmissible in this action as proof that West Bay discriminated against either that other tenant or plaintiffs. *See, e.g.*, Fed. R. Evid. 802.

Plaintiffs next point to West Bay's *Resident Selection Criteria*, *see West Bay's MSJ-Painter*, Exhibit C, and characterize as discriminatory West Bay's policy of rejecting as tenants persons with a felony arrest within the prior fifteen years.  Plaintiffs specifically argue that West Bay's policy in this regard is discriminatory on its face and as applied to plaintiffs because it "is

20

common knowledge that a policy excluding anyone with a felony arrest would discriminate based on race." *Plaintiffs' MSJ*, p. 12. *See also id.* at p. 13 ("Denying admission based solely on a felony *arrest* would have a disparate impact on minorities . . . .") (emphasis in original). This is not, however, a race discrimination case; plaintiffs' FHA claims are premised on alleged housing discrimination based on handicap.

Plaintiffs next argue that West Bay's failure to discuss alternative accommodations supports an inference of intentional discrimination. *Plaintiffs' MSJ*, p. 14. Plaintiffs have not, however, cited any controlling authority suggesting that West Bay was required to engage in an "interactive process" to negotiate a reasonable accommodation or that a failure to engage in such a process supports an inference of intentional discrimination. In any event, the evidence also indicates that West Bay offered Painter-Payne an alternative accommodation, *i.e.*, someone other than Painter could serve as her live-in aide.

Finally, plaintiffs argue that evidence of West Bay's failure to provide a reasonable accommodation supports an inference of intentional discrimination. However, as discussed *supra*, plaintiffs have offered no admissible evidence that it was only Painter who could serve as Painter-Payne's live-in aide; plaintiffs have therefore offered no evidence that a reasonable accommodation consisted only of permitting Painter to serve as Painter-Payne's live-in aide.

Based on the foregoing, the Court concludes that plaintiffs have failed to create a genuine issue of material fact as to their disparate treatment claim.  The evidence cited by plaintiffs is simply insufficient to raise an inference of intentional discrimination because of a handicap.

In sum, the Court concludes that plaintiffs have not raised a genuine issue of material fact and West Bay is entitled to judgment as a matter of law on all of plaintiffs' FHA claims.  *West Bay's MSJ-Painter*, ECF 50, is therefore **GRANTED.**  *West Bay's MSJ-Painter-Payne*, ECF 51, is **GRANTED.**  *Plaintiffs' MSJ*, ECF 60, is **DENIED.**

Painter has also asserted a state law claim of defamation against West Bay.  Because West Bay is entitled to summary judgment on all of plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Painter's state law defamation claim.  *See* 28 U.S.C. § 1367(c)(3).  Painter's state law defamation claim is dismissed without prejudice.

Plaintiffs have also filed a motion *in limine* to exclude an expert report attached to *West Bay's MSJ-Painter-Payne*.  In the challenged  report, West Bay's expert offered an opinion on whether West Bay reasonably accommodated Painter-Payne's disability.  Because the Court has not relied on that report or opinion, the Court declines to address the merits of *Plaintiffs' Motion in Limine*.

**WHEREUPON** plaintiffs' *Motion to Strike*, ECF 94, is **GRANTED.** *West Bay's MSJ-Painter*, ECF 50, is **GRANTED,** *West Bay's MSJ-Painter-Payne*, ECF 51, is **GRANTED, and** *Plaintiffs' MSJ*, ECF 60, is **DENIED.**

Plaintiffs' claims under the Fair Housing Act are **DISMISSED** with prejudice; plaintiff Painter's state law claim for defamation is **DISMISSED** without prejudice.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** accordingly.


September 16, 2014                          *s/Norah McCann King*_____
                                            Norah M^cCann King
                                     United States Magistrate Judge